FILED by [signature] D.C.
JUN 09 2015
STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.** 15-20417

**18 U.S.C. § 371**
**18 U.S.C. § 982**

CR-DIMITROULEAS

SNOW

**UNITED STATES OF AMERICA**

**vs.**

**OSNIER PUPO,**

**Defendant.**
______________________________/

**INFORMATION**

The United States Attorney charges that:

**GENERAL ALLEGATIONS**

At all times material to this Information,

1. The Medicare Program ("Medicare") was a federal health care program providing benefits to persons who were 65 or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320-7b(f).

3. Part B of the Medicare program covered partial hospitalization programs ("PHPs") connected with the treatment of mental illness. The treatment program of PHPs closely resembled that of a highly structured, short-term hospital inpatient program, but it was a distinct and organized intensive treatment program that offered less than 24-hour daily care and

was designed, in part, to reduce medical costs by treating qualifying individuals outside the hospital setting.

4. Under the PHP benefit, Medicare covered the following services: (1) individual and group therapy with physicians or psychologists (or other authorized mental health professionals); (2) occupational therapy; (3) services of social workers, trained psychiatric nurses, and other staff trained to work with psychiatric patients; (4) drugs and biologicals furnished for therapeutic purposes that cannot be self-administered; (5) individualized activity therapies that were not primarily recreational or diversionary; (6) family counseling (for treatment of the patient's condition); (7) patient training and education; and (8) diagnostic services.

5. Medicare generally required that the PHP be provided at a facility that was hospital-based or hospital-affiliated, but Medicare also allowed a PHP to be provided in a Community Mental Health Center ("CMHC"), which was a provider type under Part A of Medicare.

6. Medicare required that, to qualify for the PHP benefit, the services must have been reasonable and necessary for the diagnosis and active treatment of the individual's condition. The program also must have been reasonably expected to improve or maintain the condition and functional level of the patient and to prevent relapse or hospitalization. The program must have been prescribed by a physician and furnished under the general supervision of a physician and under an established plan of treatment that meets Medicare requirements.

7. Typically, a patient who needed this intensive PHP treatment had a long history of mental illness that has been treated. Patients were ordinarily referred either (a) by a hospital after full inpatient hospitalization for severe mental illness or (b) by a doctor who was trying to

prevent full inpatient hospitalization for a severely mentally ill patient the doctor had been treating.

8. Medicare did not cover programs involving primarily social, recreational, or diversionary activities.

9. In order to receive payment from Medicare, a CMHC, medical clinic, or physician was required to submit a health insurance claim form to Medicare, called a Form 1450. The claims may have been submitted in hard copy or electronically. A CMHC, medical clinic, and physician may have contracted with a billing company to transmit claims to Medicare on their behalf.

10. Medicare Part B was administered in Florida by a government contractor which, pursuant to contract with the United States Department of Health and Human Services, served as an agent on behalf of the United States Department of Health and Human Services to receive, adjudicate, and pay Medicare Part B claims submitted to it by Medicare beneficiaries, physicians, or CMHCs. Medicare Part B paid CMHCs and physicians directly for the cost of PHP services furnished to eligible Medicare beneficiaries, provided that the services met Medicare requirements.

**Relevant Entities and the Defendant**

11. R&S Community Mental Health, Inc. ("R&S") was a Florida corporation, incorporated on or about April 7, 2003, that did business in Miami-Dade County, Florida. R&S purported to operate a community mental health center, which offered PHP services to eligible Medicare beneficiaries.

12. St. Theresa Community Mental Health Center, Inc. ("St. Theresa") was a Florida corporation, incorporated on or about January 12, 2004, that did business in Miami-Dade

County, Florida. St. Theresa purported to operate a community mental health center, which offered PHP services to eligible Medicare beneficiaries.

13. New Day Community Mental Health Center, LLC ("New Day") was a Florida corporation, incorporated on or about August 4, 2005, that did business in Miami-Dade County, Florida. New Day purported to operate a community mental health center, which offered PHP services to eligible Medicare beneficiaries.

14. Transportation Services Providers, Inc. was a Florida corporation, incorporated on or about January 13, 2006, that purportedly did business in Miami-Dade County, Florida.

15. Defendant **OSNIER PUPO**, a resident of Broward County, Florida, worked at R&S, St. Theresa, and New Day.

16. **OSNIER PUPO** was the owner and operator of KOD Business Corp, a corporation, incorporated on or about October 1, 2008, which purportedly did business in Miami-Dade County, Florida.

**CONSPIRACY TO DEFRAUD THE UNITED STATES AND PAY AND RECEIVE HEALTH CARE KICKBACKS (18 U.S.C. § 371)**

From in or around January 2008, through at least in or around December 2010, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**OSNIER PUPO,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with others, known and unknown to the United States Attorney, to commit certain offenses against the United States, that is:

(a) to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States

Department of Health and Human Services in its administration and oversight of the Medicare program;

(b) to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), by knowingly and willfully soliciting and receiving remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of an item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare; and

(c) to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of an item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

**PURPOSE OF THE CONSPIRACY**

It was the purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by: (1) offering, paying, soliciting, and receiving kickbacks and bribes in return for referring Medicare beneficiaries to R&S, St. Theresa, and New Day to serve as patients; and (2) submitting and causing the submission of claims to Medicare for PHP services that R&S, St. Theresa, and New Day purportedly provided to those beneficiaries.

**MANNER AND MEANS OF THE CONSPIRACY**

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

17. **OSNIER PUPO** and his co-conspirators offered and paid kickbacks to patient recruiters in return for referring Medicare beneficiaries to serve as patients at R&S, St. Theresa, and New Day for PHP services.

18. **OSNIER PUPO** and his co-conspirators solicited and received kickbacks in return for referring Medicare beneficiaries to serve as patients at R&S, St. Theresa, and New Day for PHP services.

19. **OSNIER PUPO** and his co-conspirators offered and paid kickbacks to Medicare beneficiaries in order to induce them to serve as patients at R&S, St. Theresa, and New Day.

20. **OSNIER PUPO** and his co-conspirators submitted and caused R&S, St. Theresa, and New Day to submit claims to Medicare for PHP services purportedly rendered to the recruited Medicare beneficiaries.

21. **OSNIER PUPO** and his co-conspirators caused Medicare to pay R&S, St. Theresa, and New Day based upon the claims for PHP services purportedly rendered to the recruited Medicare beneficiaries.

**OVERT ACTS**

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

1. On or about June 18, 2010, **OSNIER PUPO** deposited check number 1860 in the approximate amount of $3,149, drawn on the corporate account of a company, Transportation Services Providers, Inc., controlled by a co-conspirator, into the corporate account of KOD Business Corp, a company **OSNIER PUPO** controlled.

2. On or about July 7, 2010, **OSNIER PUPO** deposited check number 1879 in the approximate amount of $3,149, drawn on the corporate account of a company, Transportation

Services Providers, Inc., controlled by a co-conspirator, into the corporate account of KOD Business Corp, a company **OSNIER PUPO** controlled.

All in violation of Title 18, United States Code, Section 371.

**FORFEITURE**
**(18 U.S.C. § 982)**

1. The allegations of this Information are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which **OSNIER PUPO** has an interest.

2. Upon conviction of the offense charged in this Information, the defendant shall forfeit to the United States of America any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3. The property which is subject to forfeiture includes, but is not limited to, the following: A sum of money equal in value to the property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the violation alleged in this Information, which the United States of America will seek as a forfeiture money judgment, jointly and severally, against the defendant as part of his sentence.

All pursuant to Title 18, United States Code, Section 982(a)(7) and the procedures set forth in Title 21, United States Code, Section 853.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

GEJAA GOBENA
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

A. BRENDAN STEWART
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA** **CASE NO.** ______________________

**vs.**

**OSNIER PUPO,**
**Defendant.**
______________________________/

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)

_X_ Miami ____ Key West
____ FTL ____ WPB ____ FTP

New Defendant(s) ____ No ____
Number of New Defendants ____
Total number of counts ____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No) _Y__
List language and/or dialect Spanish

4. This case will take _0_ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

| | (Check only one) | | | (Check only one) | |
|---|---|---|---|---|---|
| I | 0 to 5 days | X | | Petty | |
| II | 6 to 10 days | | | Minor | |
| II | 11 to 20 days | | | Misdem. | |
| IV | 21 to 60 days | | | Felony | X |
| V: | 61 days and over | | | | |

6. Has this case been previously filed in this District Court? (Yes or No) No
If yes:
Judge: Case No. ______________
(Attach copy of dispositive order)
Has a complaint been filed in this matter? (Yes or No) No
If yes:
Magistrate Case No. ______________
Related Miscellaneous numbers: ______________
Defendant(s) in federal custody as of ______________
Defendant(s) in state custody as of ______________
Rule 20 from the ______________ District of ______________

Is this a potential death penalty case? (Yes or No) No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? ______ Yes _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? ______ Yes _X_ No

[signature]
A. BRENDAN STEWART
TRIAL ATTORNEY, U.S. DEPARTMENT OF JUSTICE
SD FL COURT ID NO. A5501801

*Penalty Sheet(s) attached

REV 4/8/08

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name:** OSNIER PUPO

**Case No:** ____________________

Count #: 1

Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks

Title 18, United States Code, Section 371

***Max. Penalty:** Five (5) years' imprisonment

Count #:

____________________

____________________

***Max. Penalty:** ____________________

Count #:

____________________

____________________

***Max. Penalty:** ____________________

Count #:

____________________

____________________

***Max. Penalty:** ____________________

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

United States of America
v.
OSNIER PUPO,
Defendant

Case No. 15-20417 CR

CR - DIMITROULEAS
SNOW

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: ____________

____________________
*Defendant's signature*

____________________
*Signature of defendant's attorney*

JUAN MOURIN ESQ.
*Printed name of defendant's attorney*

____________________
*Judge's signature*

____________________
*Judge's printed name and title*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**CASE NUMBER:** ____________________

**BOND RECOMMENDATION**

DEFENDANT: OSNIER PUPO,

personal surety, electronic monitoring
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: ____________________
AUSA: A. Brendan Stewart, DOJ

Last Known Address: ____________________

____________________

____________________

What Facility: ____________________

____________________

Agent(s): FBI S/A Jacqueline Fruge
(FBI) (SECRET SERVICE) (DEA) (IRS) (ICE) (**OTHER**)
954.605.3550